HURLEY et al. v. BROWN.

(Supreme Court, Appellate Division, Second Department. November 21, 1899.)

1. DEEDS—COVENANTS—BUILDING RESTRICTION.
    A covenant by a grantee in a deed to build on the land a substantial two-story dwelling house to cost not less than a certain sum cannot be construed as a covenant that nothing but a dwelling house should be maintained thereon, or as forbidding the subsequent erection of buildings of a different character.

2. SAME—ENFORCEMENT AFTER BREACH.
    A covenant by a grantee in a deed to build a dwelling house on the land cannot be enforced against a subsequent grantee, where, long before

the conveyance to the latter, the covenantor was in default, and the covenant broken.

**3 SAME—USE OF PROPERTY.**
   A covenant by a grantee in a deed that the premises shall not be so used as injuriously to affect the use of adjoining property is not violated, as a matter of law, by the erection thereon of shops and flats.

Appeal from special term, Kings county.

Action by John J. Hurley and another against Henry Brown. From an order dissolving an injunction, plaintiffs appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

S. S. Whitehouse, for appellants.
Horace Graves, for respondent.

CULLEN, J. This action is brought to restrain the defendant from erecting on certain lots on Twelfth avenue in the borough of Brooklyn any buildings to be used for stores or other purposes, or for the use of more than one family, and from building within 20 feet of the avenue. The action is founded on a covenant in a deed made by the West Brooklyn Improvement Company to one Mary West, on August 29, 1889, as follows:

"And it is covenanted by the party of the second part, and the heirs and assigns of the party of the second part, with the party of the first part, its successors and assigns, as follows: That no blacksmith or carpenter shop, no manufactory of any kind, no livery stable, pig pen, bone-boiling or similar establishment shall be erected or permitted on said land; that no spirituous or malt liquor shall be made or sold or kept for sale upon said premises; that no nuisance, or offensive, noisy, or illegal trade, calling, or transaction shall be done, suffered, or permitted thereon, and that no part of said premises shall be so used or occupied as injuriously to affect the use, occupation, or value of the adjoining or adjacent premises for residence purposes, or the neighborhood wherein said premises are situated; that the party of the second part will erect and build on said land a substantial two-story dwelling house, to cost not less than $2,500; that no building whatsoever shall be erected on said land within twenty feet of the southeasterly side of Twelfth avenue; that no stable, carriage house, or shed shall be erected on said land within sixty feet of the southeasterly side of Twelfth avenue; that any breach or threatened breach of this covenant may be enjoined upon the application of the party of the first part, its successors or assigns; that the party of the first part, or its successors, shall also have the right to recover the sum of $1,000 as liquidated damages for every breach of this covenant from the person committing such breach; and that these covenants are to be taken and construed as running with the land."

December, 1898, Mary West conveyed the premises to the defendant. The West Brooklyn Improvement Company, at the time of the conveyance to West, was the owner of a tract of several thousand lots. The plaintiff derived title from the improvement company by a deed containing a similar covenant. The defendant purposes erecting on his premises a three-story building, to cost over $20,000, with stores on the first floor and flats or apartments above; and the question is whether the erection of such a building violates the covenant. It will be observed that the covenant does not, in terms, forbid the erection of stores, or the use of the premises for business or tenement purposes. The grantee covenanted to

"erect and build on said land a substantial two-story dwelling house, to cost not less than $2,500," but this cannot be construed as a covenant that nothing but a dwelling house should be maintained on the land, for, if so, it would equally forbid the erection of any dwelling house of more than two stories. Certainly this was not the intent of the parties. The grantor was the owner of a large tract of land, which it was endeavoring to market in suburban lots. The erection of buildings and improvements on the property it might sell would enhance the value of the rest, and render it more marketable. For this reason it required its grantees to agree to improve the property by the erection of a two-story dwelling house costing not less than $2,500. But there could have been no intention to restrict the height of the houses; on the contrary, the higher the buildings, and the more expensive they might be, the greater would be the advantage to adjacent property. Still even this covenant, if literally construed, would not limit the use of the property, nor the subsequent erection of buildings of a different character. If the grantee erected a two-story dwelling house, he would perform his covenant, and thereafter might alter the structure, erect a new building, or use it for any purpose not forbidden by the other provisions of his agreement. We doubt whether this covenant to erect a building ran with the land, so as to be enforceable against a subsequent grantee. But, if we assume that it ran with the land, still it cannot be enforced against this defendant. No time being prescribed in which to build the house, the covenantor was bound to build it within a reasonable time. Ten years elapsed between the conveyance to West and the conveyance from West to the defendant. Certainly long before the second conveyance West was in default, and there was a breach of the covenant. An assignee or grantee is not liable for breaches occurring prior to his acquisition of title. In St. Saviour's Churchwardens v. Smith, 3 Burrows, 1271, the lessee had covenanted to pull down, within seven years, certain houses on the demised premises, and erect new ones thereon. The defendant was the assignee of the lease after the expiration of the seven years. It was held that he was not liable for a breach of the covenant previously committed. See, also, Tillotson v. Boyd, 4 Sandf. 516. The covenant in this case is markedly different from that in Sonn v. Heilberg, 38 App. Div. 515, 56 N. Y. Supp. 341. There the covenant was negative in its terms, not to erect at any time buildings other than of a prescribed character. It was plainly intended to create a continuous easement in the lands conveyed in favor of the grantor and other grantees from him. In the present case, where the covenant both commences and terminates with terms of restriction, the provision as to the erection of a dwelling house is interjected in the form of a covenant to do an affirmative act. Some effect must be given to this change of phraseology. If, as contended by the appellant, all that was meant by this provision was that nothing but a dwelling house to cost not less than $2,500 should be at any time erected on the premises, it was very easy to have said so. It is provided that no blacksmith or carpenter shop or manufactory of

any kind, etc., shall be erected or permitted on the land. If it was intended that no shop or store of any character should be allowed, why was it not so written? The very fact that certain business uses are expressly forbidden indicates that other business uses of a different character are permitted. The rule is that these covenants must be strictly construed against the grantors. Duryea v. Mayor, etc., 62 N. Y. 592; Blackman v. Striker, 142 N. Y. 555, 37 N. E. 484. To interpret this covenant as forbidding the use of the property for any business purposes would be an unwarrantable extension of its terms. In no event would the erection of a flat or tenement house be a violation of the covenant against erecting anything but dwelling houses. Sonn v. Heilberg, supra. If, after the buildings are erected, the defendant permits their use to affect injuriously the use, occupation, or value of adjacent premises, in violation of the covenant, that may be enjoined; but this provision of the covenant goes only to the use of the buildings or structures, and not to the right of the defendant to erect them. We cannot say, as a matter of law, that the presence of shops and flats will necessarily depreciate or injure neighboring property. There can be no question as to the efficacy of the restriction against building within 20 feet of the line of the avenue. The defendant denies that he has any intention to build within this limit, and we assume it was on this ground that the injunction was entirely dissolved. If at any time hereafter he threatens to violate the covenant in this respect, the plaintiff may apply ex parte for an injunction.

The order appealed from should be affirmed, with $10 costs and disbursements, but with leave to the plaintiff at any time to apply for an order restraining the defendant from building within 20 feet of Twelfth avenue. All concur.