## BATCHELOR v. HINKLE et al.

(Supreme Court, Appellate Division, First Department. November 18, 1910.)

1. INJUNCTION (§ 34*)—"PROPERTY" SUBJECT OF RELIEF—EASEMENTS—APPROPRIATION WITHOUT RIGHT.

An easement appurtenant to real estate is "property" within the Constitution, and, where the same is appropriated by one having no right to acquire property under the right of eminent domain, the owner of the easement is entitled to appeal to equity to enjoin the appropriation.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 74–81; Dec. Dig. § 34.*

For other definitions, see Words and Phrases, vol. 6, pp. 5693–5728; vol. 8, pp. 7768–7770.]

2. INJUNCTION (§ 195*) — APPROPRIATION OF EASEMENT—RELIEF—MANDATORY INJUNCTION—DAMAGES AS ALTERNATIVE.

An owner of an easement in a strip of land dedicated for the widening of a street adjacent to his land notified one contemplating the erection of a building encroaching on the strip that the erection thereof was an illegal appropriation of property, and demanded that the latter should respect the conditions under which the property had been acquired. The notice was disregarded, and the owner commenced an action in which he obtained an injunction, which was subsequently vacated. At the trial, the complaint was dismissed, and pending an appeal the building was erected, and the strip subject to the easement was appropriated therefor. *Held*, that the owner of the easement was entitled to a mandatory injunction for the removal of the building from the strip, and that its maintenance thereon could not be permitted on making compensation for the damages caused thereby to the owner of the easement.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 415; Dec. Dig. § 195.*]

Laughlin, J., dissenting in part.

Appeal from Special Term, New York County.

Action by Rosanna Batchelor against Eugene E. Hinkle and another. From a judgment for defendants, plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and DOWLING, JJ.

Payson Merrill, for appellant.
Charles A. Collin, for respondents.

INGRAHAM, P. J. Upon a former appeal from a judgment in favor of the defendants (132 App. Div. 620, 117 N. Y. Supp. 542), the judgment was reversed upon the ground that the plaintiff had acquired an easement in this strip of land which had been dedicated for widen-

---

ing of the adjacent street appurtenant to the property upon the ground that each of the owners of the property adjoining upon the street had acquired an easement which was appurtenant to his property in the strip of land which had been dedicated; that this easement appurtenant to the plaintiff's property was property of the plaintiff which no one could appropriate to his own use without the plaintiff's consent, and the act of the defendants in erecting a building upon this strip of land was an appropriation of the plaintiff's property, and the plaintiff was entitled to an injunction restraining such unlawful appropriation. We expressly held that the rule that a court of equity would not enforce a covenant in relation to a use of land where, for any reason, the enforcement of such covenant would be inequitable had no application. Upon the new trial of the case the Special Term failed to apply this rule, but has again awarded a judgment in favor of the defendants, applying the principles of equity which, as we have held, were only applicable where a covenant was sought to be enforced which conveyed no property to the parties seeking to enforce it. The learned counsel for the respondents has sought to sustain this judgment upon a principle which this court expressly held had no application.

The court has re-examined the question, but sees no reason to change the views before entertained. If the plaintiff's interest in this strip of land is an easement properly appurtenant to the plaintiff's property and which the defendants have unlawfully appropriated, it must be apparent that the court cannot deprive the plaintiff of her property, or by a judgment force the plaintiff to sell her property to the defendants on the payment of any sum of money which the court should fix as its value. The defendants' appropriation of this property is not for public use, the title to which the defendants have the right to acquire by eminent domain; and, thus, the case is not brought within the principle, which has now become well settled in this state, that where a railroad company has occupied a street for railroad purposes and has power to acquire the interest of an abutting owner in the street by the right of eminent domain, upon an application for an injunction to restrain such use, the court would refuse the relief on condition that the railroad company paid to the owner the value of the property appropriated which it would have to pay upon proper condemnation proceedings, as this only applies where the party appropriating the property has a right to acquire title to it for the right of eminent domain.

The right of an abutting owner having an interest in a street to an injunction from a court of equity restraining such an encroachment was presented to the Court of Appeals in the case of Williams v. N. Y. C. R. Co., 16 N. Y. 97, 69 Am. Dec. 651. It was there held that, where the defendants in constructing their railroad in a street and without any appraisal of the abutting owner's damages, or compensation to him in any form, were guilty of an unwarrantable intrusion and trespass upon his property, he was entitled to relief; that although he had a remedy at law for the trespass, as the trespass was of a continuous nature, he had also a right to come into a court of equity, and to invoke its restraining power to prevent a multiplicity of suits, and could recover his damages as incidental to this equitable relief. Upon a sub-

sequent appeal in that case, reported as Henderson v. N. Y. C. R. Co., 78 N. Y. 423, a judgment in favor of the plaintiff, enjoining a continued occupation of the street, was affirmed. It was there said:

"Equitable relief is awarded, not as the defendant's counsel claims by way of menace, or as a means of compelling the payment of money, but that the defendant may desist from the unauthorized use of the plaintiff's property, and forbear from any further interference with their rights. To hold otherwise would leave the citizen remediless against the power of a corporation to acquire and use property without compensation, and, to prevent that, the court ought not to be reluctant to exercise its jurisdiction. The facts in this case show that the entry upon the land in question was under the belief that the right to do so had been obtained; but it was not so, and the decree in this particular is just."

And it was held that the decision of the Court of Appeals upon the former appeal established the plaintiff's right to an injunction. This same principle was applied and extended in the elevated railroad litigation, which arose upon the appropriation of the streets in the city of New York for an elevated railroad. See Story v. N. Y. Elevated R. R. Co., 90 N. Y. 122, 43 Am. Rep. 146. The decision of that case proceeded upon the principle that an easement appurtenant to real property was "property" within the meaning of the Constitution, and could not be appropriated by another without compensation and that to enforce the right to such easement the plaintiff was entitled to appeal to a court of equity for relief. See, also, Doyle v. Lord, 64 N. Y. 432, 21 Am. Rep. 629; People ex rel. Williams v. Haines, 49 N. Y. 587; Eagle v. Charing Ry. Co., L. R., 2 C. P. Cases, 638. And the Supreme Court of the United States has lately held that an easement of abutting property owners in the streets of New York is property, and within the protection of the Constitution of the United States. Muhlker v. N. Y. & H. R. R. Co., 197 U. S. 544, 25 Sup. Ct. 522, 49 L. Ed. 872. The only case, to which our attention has been called, where a court of equity is justified in refusing injunctive relief upon payment to the party whose property has been appropriated the value of the property, is where the person appropriating the property has the right to acquire the property under the right of eminent domain; but where property has been thus appropriated by one having no right to acquire the property, or no right to compel the owner of the property to dispose of it against his consent, the owner of the property is entitled to it and to its full enjoyment; and, where there has been such an illegal appropriation, the person whose property has been appropriated is entitled to appeal to a court of equity to enjoin the continuing trespass. This principle has been settled in this state by the almost unanimous decision of the courts. In Ackerman v. True, 175 N. Y. 353, 67 N. E. 629, where an owner of abutting property had appropriated a part of the public street, the court held that the owner of the other property abutting upon the street had a right to maintain an action to abate the nuisance and also to recover any damages that the plaintiff might have sustained by reason of the wrongful acts of the defendant in constructing and maintaining this encroachment upon the street. In that case it was contended that the plaintiff was not entitled to a mandatory injunction; but that claim was disallowed, and the plaintiff was held to be entitled to the injunction. And in the late

case of City of New York v. Rice, 198 N. Y. 124, 91 N. E. 283, a mandatory injunction was sustained, restraining the defendant from continuing to occupy a portion of the public street in the maintenance of a building upon abutting property. It was also there held that there was no force in the objection that an action in equity is not maintainable.

In this case, before the erection of this building was commenced, notice was given to the defendants that the erection of the building upon this reserved space of five feet was an illegal appropriation of the plaintiff's property, and demand was made that the defendants should respect the conditions under which they had acquired the property. Disregarding this notice, this action was commenced, and an injunction was obtained which was subsequently vacated. The action was then tried; but the complaint was dismissed, and pending an appeal to this court the defendants continued the erection of the building, appropriating the five feet, which, as we have held, was subject to an easement appurtenant to the plaintiff's property. The defendants had notice of the plaintiff's claim and erected their building pending a litigation to enforce it, and cannot complain if, upon a final determination in a suit which had been commenced before the building was erected, it is determined that this appropriation was unlawful. A case which often appeals to a court of equity where a person, without notice of a claim, has made extensive improvements upon its own property, is not presented. The defendants have, in violation of the plaintiff's property rights, proceeded with the building, and they must bear the consequences of an unlawful appropriation of the property of another.

Before finally disposing of the case, it is proper to say that upon this evidence we think the finding of the court that the plaintiff's interest in this property was of the value of $1 is opposed to the evidence, as we think, upon the substantial undisputed evidence, the plaintiff's interest in this strip of land was of a substantial value.

I think the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event, with the direction that upon a new trial the law as established by this court as to the rights of the plaintiff should be followed by the Special Term.

McLAUGHLIN, CLARKE, and DOWLING, JJ., concur.

LAUGHLIN, J. I concur in the opinion of Presiding Justice INGRAHAM, excepting in so far as it expresses the view that the circumstances under which the building in question was erected are such that five feet on the front of the building should be removed, and that the defendants should be permitted to maintain the building on compensating the plaintiff for the damages caused by the violation of the restrictive covenant which this court on the former appeal (132 App. Div. 620, 117 N. Y. Supp. 542) construed as giving the plaintiff an easement in that part of the premises of the defendants reserved for courtyard purposes. I agree that the plaintiff did not forfeit her rights with the agreement by making the alteration required in changing the dwelling house into a place of business, and that she is not estopped thereby from enforcing any remedy she would otherwise have had. I am also

of the opinion that the preponderance of the evidence shows that the plaintiff has sustained substantial damages, and that the award of $1 is wholly inadequate. It appears that the cost and damage to the defendants that would be caused by a mandatory injunction requiring them to remove the front of their building to the setback line would be $66,000. The value of the plaintiff's premises is not shown; but it is quite probable that it would not equal or greatly exceed the damages which would be inflicted on the defendants by such a mandatory injunction. The highest estimate given by any witness of the depreciation in the value of the plaintiff's premises by the erection of the building on the defendants' premises over the setback line is $5,000.

The rule is well settled that a court of equity will enforce such an agreement according to its terms where it has been willfully violated (Stowers v. Gilbert, 156 N. Y. 600, 51 N. E. 282; Lynch v. Inst. for Savings, 159 Mass. 306, 34 N. E. 364, 20 L. R. A. 842); but, on the other hand, I deem the proposition well sustained on principle and by authority that where the violation has not been willful, and where the defendant has acted in good faith, that is to say, in the honest belief, founded on reasonable ground, that he had a right to do what he has done, and the plaintiff can be compensated in damages, and his damages are small in comparison with the damages that will be sustained by the defendant by the issuance of a mandatory injunction, a court of equity will either leave the plaintiff to his remedy at law or determine the amount of the damages sustained by him and grant a mandatory injunction only in the event that the defendant fails within a specified time to pay the same, and on such payment will require that the plaintiff execute and deliver to the defendant a release from the violation of the covenant. This rule has repeatedly been applied to restrictive covenants, including setback agreements, with respect to the use of premises where conditions in the neighborhood have undergone a material change. Roth v. Jung, 79 App. Div. 1, 79 N. Y. Supp. 822; Columbia College v. Thacher, 87 N. Y. 311, 41 Am. Rep. 365; McClure v. Leaycraft, 183 N. Y. 36, 75 N. E. 961; Amerman v. Deane, 132 N. Y. 355, 30 N. E. 741, 28 Am. St. Rep. 584; Deeves v. Constable, 87 App. Div. 352, 84 N. Y. Supp. 592; Schwarz v. Duhne, 118 App. Div. 105, 103 N. Y. Supp. 14; Schefer v. Ball, 53 Misc. Rep. 448, 104 N. Y. Supp. 1028, affirmed 120 App. Div. 880, 105 N. Y. Supp. 1142, and 192 N. Y. 589, 85 N. E. 1115.

The plaintiff's easements in the courtyard space are no greater than the easements of an abutting owner in a public street, and in those cases, where such easements have been invaded by the erection of an elevated railroad, the courts have invariably withheld an injunction on condition that the elevated railroad company pay the abutting owner the damages, and on such payment have required that the plaintiff deliver a release of the easements so far as invaded. In those cases the power of eminent domain existed, but it had not been exercised. The rule, however, is not confined to cases where the defendant is vested with the power of eminent domain to acquire the easement or property invaded, but has recently been extended by this court, and our decision was affirmed by the Court of Appeals, to the invasion of an abutter's easement by the elevated railroad company where the com-

pany did not have the power of eminent domain and where the structure was a public nuisance. Knoth v. Manhattan Railway Co., 109 App. Div. 802, 96 N. Y. Supp. 844, affirmed 187 N. Y. 243, 79 N. E. 1015. The same rule has also been applied by this court where a building has been erected partly over the lands of another. Crocker v. Manhattan Life Ins. Co., 61 App. Div. 226, 70 N. Y. Supp. 492. In McClure v. Leaycraft, supra, the rule is stated as follows:

"An injunction that bears heavily on the defendant without benefiting the plaintiff will always be withheld as oppressive. No injustice is done, for the damages sustained can be recovered in an action at law, and the material change of circumstances so affects the interests of the parties as to make that remedy just to both."

I think that the principle here stated should govern in the case at bar, with the exception that, since the plaintiff is properly in a court of equity, the court should retain the action and give him the only relief to which on those facts he is entitled, viz., a judgment for his damages. In the case at bar, the defendants acted upon an erroneous view with respect to their legal rights, as did the elevated railroad company in the case last cited. Bad faith was not imputed to the elevated railroad company in not knowing its legal rights, and in my opinion it should not be imputed to the defendants now before the court. The defendants were aware of the restrictive covenant, and they attempted to remove any question that might arise thereunder by endeavoring to have the owners of the property affected thereby cancel it. Every owner of property in the block, with the exception of the plaintiff and one another, whose property fronted on Broadway, evidently deemed the restrictive covenant of no value and consented to its cancellation or manifested willingness to so consent. There was room for contention in good faith and for an honest belief upon the facts that this restrictive covenant was of such a nature that it was only intended to apply while the neighborhood continued to be used for private residential purposes, and that it had ceased to be operative or enforceable for the reason that the use of the property affected thereby had, for the most part, changed and was then used for business purposes.

The defendants were about to make a large expenditure of money in erecting a building upon their premises for business purposes, as the land had become more valuable for business purposes and was best adapted to that use. They evidently regarded the restrictive covenant as of no value, but rather as a detriment if it were still operative. Evidently with a view to removing any question there might be regarding the effect of the restrictive covenant, they attempted to have it canceled by consent. On finding that all owners of property affected thereby, excepting the plaintiff, whose premises were some distance away, being number 26, while defendants' were numbers 38, 40, 42, and 44 West Twenty-Sixth street, and another whose property was still farther away and fronted on Broadway, favored that course, they, doubtless acting under the advice of counsel, proceeded to erect the building to the street line instead of to the setback line. As soon as the plaintiff brought this action, they suspended building operations until

the court at Special Term in denying the plaintiff's motion for an injunction construed the covenant as "intended to apply only to the street while used for private dwellings," and thereafter they proceeded with the erection of the building, which has since been completed. In the meantime the court on the trial of the issues denied a permanent injunction on the same theory as that on which a temporary injunction had been denied. Before that ruling on the rights of the parties was reversed by this court, the structure had been completed. It may not fairly be said that defendants proceeded willfully or in utter disregard of the plaintiff's rights. It is to be borne in mind that the defendants had a large investment upon which they could receive no return until they completed their building, and they may have had outstanding contracts for construction upon which they would have been subjected to heavy damages.

While, therefore, I concur in the reversal of the judgment for the reason that the plaintiff has sustained substantial damages, I am of opinion that the facts fairly bring the case within the rule which I have stated, and that the defendants should be afforded an opportunity of paying the plaintiff's damages upon her releasing them from a violation of the covenant before a mandatory injunction should issue.